### NEW YORK CENT. R. CO. v. DEVINE.

Circuit Court of Appeals, Second Circuit.
January 9, 1928.

No. 52.

1. Master and servant ⚖═276(6)—Evidence held insufficient to show snowbank along track caused death of railroad employee.

In action for death of plaintiff's son, a railroad brakeman, who was assigned duty to throw switches in yards, and who was found dead, resting against snowbank on right of track in defendant's yards, evidence held insufficient to support verdict for plaintiff, on theory that snowbank along track might have caused accident.

2. Master and servant ⚖═217(21)—Railroad employee, observing unusual situation caused by snowbanks along tracks, assumed risks.

If deceased railroad employee, who was assigned duty to throw switches in yard, and who was found dead along track resting against snowbank, saw unusual situation caused by snowbanks along track, he would in law assume all risks, though he had entered bank by but 5 feet before car struck him.

In Error to the District Court of the United States for the Northern District of New York.

Action by Mary E. Devine, as administratrix of the goods, chattels, and credits of Bernard A. Devine, deceased, against the New York Central Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

Writ of error to a judgment of the District Court for the Northern District of New York (a judge from another district presiding), in favor of the plaintiff for the intestate's death while at work on the defendant's railroad.

The deceased, who was the plaintiff's son, was a brakeman in the defendant's employ in its yard at Watertown, New York. At nearly midnight on Sunday, February 1, 1925, after an absence of four or five days at Utica, he returned to work, and was assigned to throw switches in the yard. His destination required him to walk nearly the length of the yard from a shanty where he kept his lantern, boots, and overcoat. There had been a severe storm on Wednesday and Thursday, leaving from Friday on a deposit of some four feet of snow in the yard, which had not been removed. Snowplows of a sort had been run over the tracks, which pushed the snow to either side in banks 2 or 3 feet high, at the base about 8 inches from the rails, at the top 18 inches. The last seen of the deceased before the accident was when he left the shanty, bound for his duty. About 30 minutes thereafter, at midnight, he was found upon a storage track leading off the main west-bound track, with both legs cut off above the knees. His trunk lay face up, resting against the snowbank on the right of the track and his legs were across and inside of the right rail. A loose car had been shunted into this track at about this time to be run up for storage. It had a speed of about 4 miles, and there was a brakeman upon it; but it did not appear where he was or what he saw. The snowbanks had been well trodden down from

the juncture of the storage track and the main lead until within about 5 feet of the place where the deceased was found. From there forward they rose on either side. The theory of the plaintiff was that the deceased had been overtaken by the shunted car and that the banks had prevented his escape. There was evidence that it had been the defendant's custom, after large snowfalls, to clean off the yard within a few days, though it was well lighted at night, so that apparently the banks could be seen.

The complaint alleged only that the plaintiff was the deceased's intestate; it did not allege that he was her son, or that she had suffered any pecuniary damage by his death. After the plaintiff's opening, the defendant raised the point that it was insufficient on its face, and during the course of the trial the court allowed an amendment, alleging that the deceased left the plaintiff as his only next of kin, and that she was damaged by his death in the sum of $50,000.

Francis E. Cullen and Purcell, Cullen & Pitcher, all of Watertown, N. Y., for plaintiff in error.

Thomas Burns, of Watertown, N. Y., for defendant in error.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). The complaint as originally drawn was confessedly bad. Garrett v. Louisville, etc., R. Co., 235 U. S. 308, 35 S. Ct. 32, 59 L. Ed. 242. The amendment was scarcely enough to satisfy the language of that case. It did not "set out facts or circumstances adequate to apprise the defendant with reasonable particularity that such loss in fact was suffered." We understand the Supreme Court to mean more than a bare allegation of damage. As the case must in any event be retried, we do not find it necessary to decide the question, beyond suggesting that caution would seem to demand a fuller statement, if the point is to be well avoided. We entertain no doubt of the propriety of allowing any further necessary amendment.

[1] On the merits we can see no way in which a jury could conclude that the snowbank to the right of the track was the cause of the deceased's death. It appears to us quite as likely that he was overtaken unawares by the shunted car, and met his death either in his tracks or as he was escaping, but before he reached the bank. He may have slipped, or not have even tried to get out at all; he may

have tried to board the car from the bank. The position of his body is the only circumstance from which any inference can be made. From this it is assumed that he must have tried to make his escape and been caught by the bank. That is a possible explanation, but it is no more probable than others. It is altogether impossible to say what might have been the movement of his body after he was hit, and the position in which he was found certainly did not indicate that he had fallen while clambering the bank. Any conclusion appears to us the merest speculation, insufficient to support a verdict. The court told the jury that, unless the snowbank caused the accident, they must find for the defendant. On any such view of the case, he should have dismissed the complaint. The defendant's exception to the charge that the bank might have caused the accident was therefore good.

As the case must go back, we will state the only ground upon which a recovery could have lain under the evidence as it was. The District Judge will, of course, not take what we say as in any sense authoritative, in so far as another situation is developed another time. The plaintiff's evidence was that it was customary in that yard to clean the space between the tracks. We will not say that it would have been negligent not to do so generally, but, if it was the practice, though never followed elsewhere, by this or any other railroad, then the exception on that night was a circumstance which a jury might consider for the following reasons:

An employee who was acquainted with the practice might perhaps assume, if, like the deceased, he had been away, that it had been followed. If he did, he would suppose his exit to be clear on either side, and at night he might not observe that it was not. A jury might find that this possibility imposed upon the defendant a duty either to apprise the deceased of the situation, or, if it did not, to shunt the cars with more than usual care. The deceased was not warned, and the brakeman on the car may not have been duly attentive. To run a car improperly watched might therefore have been found negligent, and the defendant liable, even though the snowbank had had nothing directly to do with the disaster.

[2] The defendant invokes the rule of Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758, and Chesapeake, etc., R. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, that a railroad is not liable to its employees for a defective lookout on moving cars, or none at all. That doctrine does not

apply. We agree that, had the deceased been warned of the banks, he could not have complained, however unguarded was the shunted car, but the alternatives were to guard it, or to warn him; correlatives depending upon the departure from its accustomed practice. If the deceased once saw the unusual situation, he would in law assume all risks, though he had entered the bank by but 5 feet. But the question whether he did see them was one of contributory negligence.

Again, it may be urged that, if the duty to guard the car arose from the presence of the snowbanks, the plaintiff should not recover, unless the snowbanks were a factor in the result. A breach of the duty cannot be broader than the occasion for its existence. We do not agree. Had the deceased been warned, it is impossible to say that he would not have taken greater precautions. Though in fact caught unawares, he might not have been caught at all—might, indeed, have chosen a wholly different route to his work. A greater general attention, caused by knowledge of his added peril, might well have protected him, though, if no warning had been necessary, he would have been killed just as he was. It is enough that the snowbanks created a situation which might demand either a warning or greater vigilance in the car movement. A default in both might result in liability, though the occasion of the duty did not directly contribute to the result.

We are in considerable doubt whether, had the case been properly tried in the main, the judgment could have stood in any case. We are not censors of each others' manners, on or off the bench, and it is a poor remedy which visits upon the successful party the sufferings of his opponent. Moreover, in the case at bar the judge had some provocation in the defendant's nettling practice of filling the record with repeated formal objections. Still the upshot of the unfortunate tensity between judge and counsel may well have been a serious handicap to whatever chance the defendant had, slight enough at best. The show of irritation at the defendant's objections, the repetition several times of a determination to see that the case should be tried on the merits, the expression of wonder that any one should object to letting a "mother" tell what her son paid her, the effort to avoid any exceptions to the charge, the unfortunate exchange between judge and counsel at the very close—all these in conjunction were scarcely balanced by the formal admonition to the jury to ignore what had occurred. It is indeed unwise to disturb a verdict upon considerations of this kind, un-

less the case be clear. As we have said, we do not say that, taken alone, we should do so here, yet we must avow that it is a circumstance which has not been without weight in our conclusion that the case must go back for another trial.

Judgment reversed, and new trial ordered.